SIGMAN *v.* AUSTIN, sheriff, for use, etc.

1. When the levy of an execution is resisted upon the ground that the property levied upon has been set apart as a homestead, and, as authority for the levy, the levying creditor relies upon a waiver by the debtor of his right to have the homestead set apart, it is incumbent upon the creditor, if the existence of the homestead estate has been proved, to show affirmatively that the waiver of the homestead antedated the setting apart of the same.

2. The mere fact that a minor who is the sole beneficiary of a homestead estate does not live upon the property, and leaves the head of the family to use the proceeds of the same in such a way as he desires for a period of ten years, without calling him to account, does not cause the homestead estate to terminate and become subject to levy and sale as the property of the head of the family.

3. Plaintiffs in error who bring cases to this court upon pauper affidavits are not altogether relieved from liability for the costs, but are simply permitted to have their cases heard without the payment of costs as a condition precedent. It follows that, when a judgment of reversal is entered in a case brought to this court on pauper affidavit, it is the duty of the clerk of this court to tax the costs in the case and enter the same on the remittitur. When the remittitur is received in the court below, it is the duty of the officers of that court to enter judgment against the defendant in error for the costs that have accrued in this court, and to see that these costs are collected and remitted to the clerk of this court.

Submitted January 11, — Decided January 24, 1901.

Illegality. Before Judge Candler. Rockdale superior court. May 25, 1900.

*A. C. McCalla,* for plaintiff in error.
*G. W. Gleaton* and *J. R. Irwin,* contra.

COBB, J. An execution in favor of Austin, sheriff, for use, etc., against Sigman, was levied upon a horse and certain farm products, and the defendant interposed an affidavit of illegality. At the trial of the issue formed upon this affidavit of illegality, the jury, under the direction of the court, returned the following verdict: " We, the jury, find the property levied on in this case subject, except to corn, and we find the corn not subject." The defendant made a motion for a new trial, which being overruled, he excepted.

1. One ground of the illegality was that the property levied on was the proceeds of a homestead, and therefore not subject to levy and sale. The reply to this ground of the illegality was that the defendant had waived the homestead as to this debt. It appears that the defendant as the head of a family applied for a homestead on December 1, 1885, and that the homestead was finally approved

on December 26, 1885. The execution in the present case was founded upon a judgment based upon a cause of action growing out of the breach of a forthcoming bond which was given in 1885, the day and month that the bond was given being left blank. This bond contained a waiver of homestead. The brief of evidence recites that the plaintiff introduced the forthcoming bond, "dated ————." The date of this bond nowhere appears in the record, other than as above stated, and it is impossible to determine whether the bond was given before or after the homestead was set apart. It is very likely that the bond was given before, but one seeking to subject a homestead estate to the payment of a debt, upon the ground that the debtor had waived ꞏthe benefit of the homestead, has upon him the burden of proving that the homestead is subject to the debt, and when he relies upon a waiver of the homestead, he must make it affirmatively appear that the waiver antedated the setting apart of the homestead.

Another ground of the illegality sets up that the corn levied on is specially exempt and free from levy and sale, being the proceeds of exempted property, for the reason that the same is claimed as provisions for the use of the defendant, who is entitled to the same as provisions under the homestead and exemption laws. The court directed the verdict in the present case evidently upon the theory that the defendant had waived the benefit of the homestead, and that this waiver was ineffectual so far as provisions for use of the family were concerned. Upon no other theory could a verdict have been rendered finding a portion of the property subject and the corn not subject to the execution. It is, therefore, highly probable that the court had before it evidence showing that the waiver antedated the setting apart of the homestead; but as this does not appear in the present record, evidently having been omitted by inadvertence, we are compelled to reverse the judgment, for the reason that upon no other theory was the plaintiff entitled to a verdict. There is no other course open in the matter, for the reason that there is no intimation that the original brief of evidence of file in the office of the clerk of the trial court contained anything showing on what date the forthcoming bond was given. In such a case no other course is open to us than to deal with the case in the way it is found in the record, notwithstanding the brief of evidence as approved may not be, and in

all probability is not, a correct brief of the evidence adduced on the trial.    See, in this connection, *Minhinnett* v. *State*, 106 *Ga.* 141.

2. A further reply to the ground of illegality, that the property levied on was the proceeds of a homestead estate, was that the homestead estate had terminated.    The defendant testified that his wife named in the homestead proceedings was dead, that he had married again, and his second wife had also died, but that one of his sons was still under age, being twenty years old, and that he had been gone from home about ten years, that he did not know where his son was; that he was not living at his father's home, but was somewhere in south Georgia.    It was said that, because the wife was dead and the child had been away from home about ten years and was not living on the homestead estate, and the father did not know where he was, the reason for the continuance of the homestead no longer existed, and therefore the estate had terminated.    Homesteads set apart for the benefit of minor children do not generally terminate until the majority of such children.    Civil Code, § 2846.    The fact that a minor is not receiving the benefit of the homestead which the law has allowed to be set apart for his benefit, and that he is allowing his parent to appropriate to his own use the proceeds of property which the law says belongs to the child, does not give the creditor of the parent any right to say that the homestead has terminated.    The estate still continues until the time fixed by law for it to terminate, notwithstanding the proceeds of the estate may be diverted in a way that the law does not authorize.    This absent son is the beneficiary of this homestead, and has the authority at any time he may see proper to assert his rights as such.    It is true it has been held that where the head of the family and the beneficiaries all leave the State, the homestead terminates.    *Knox* v. *Yow*, 91 *Ga.* 368 (4).    But the principle of that decision is not applicable here.    The homestead estate did not terminate, and the court properly so held.

Another ground of the affidavit of illegality set up that the judgment upon which the execution issued was invalid, for the reason that it was entered nunc pro tunc at a term subsequent to the one at which the verdict was rendered, and without any notice to the defendant; and still another ground raised the objection that the fi. fa. was issued for a given amount as principal and a certain amount as interest, and the verdict upon which it was based was

for a given amount as principal without any interest. These objections are not well taken, for the reason that there does not appear in the record any evidence to support the same. The execution is contained in the record, but we do not find the judgment set out therein. In reference to that ground of illegality which set up that there was a variance between the levy and the advertisement, it is not necessary to pass on the same, as the sale has been stopped, and the defect, if any existed, can be cured by another advertisement.

3. This case was brought here upon a pauper affidavit; that is, an affidavit by the plaintiff in error that from his poverty he was unable to pay the costs. The clerk of this court, in an oral motion in the nature of a motion to tax costs, raises the question as to whether in cases of this character the parties to the same shall be entirely relieved from the payment of costs in this court, or whether the effect of the provision of the constitution of 1877 is merely to relieve the plaintiff in error in such case from the payment of costs as a condition precedent to the hearing in this court, but still making the plaintiff or defendant in error, as the case may be, liable for the costs in the event the one ultimately liable has property subject to the payment of a judgment for costs, if the case has been heard and determined by this court. In the eleventh section of the act establishing the Supreme Court it was provided that the clerk should be entitled to the same fees as clerks of the superior courts, "to be taxed as part of the costs, and for which the attorney of record shall always be bound." Acts 1845, p. 18, 1 *Ga.* p. ix. Among the first rules adopted by this court was one declaring that the attorney who makes out and tenders the bill of exceptions shall sign his name to the same, "and shall be, with counsel representing the case before this court, bound for costs." 1 *Ga.* p. xii. The following provisions in reference to costs in this court are to be found in the present code, all of which are based upon legislation prior to the constitution of 1877: It is the duty of the clerk to make out a remittitur of every case, and to transmit it to the court below, "together with a certificate of the amount of the costs, and by whom paid." Civil Code, § 5510 (7). The attorney representing the plaintiff's cause shall, in all cases, be responsible for the costs in the Supreme Court. If there is a judgment of reversal, the plaintiff in error is entitled to a judgment for the amount of the costs against the

defendant in error, as soon as the remittitur is returned to the court below. Civil Code, § 5591. At the close of each judgment on the minutes, the clerk shall tax his costs, subject to revision by the judges of the Supreme Court, and the costs so taxed shall be entered as a part of the remittitur. Civil Code, § 5592. When judgment is pronounced in any case, the clerk shall tax the costs, which shall be entered on the minutes at the foot of the judgment, without charge. Civil Code, § 5512. Construing these provisions together, it seems to have been the intention of the General Assembly, prior to the constitution of 1877, that not only should the plaintiff in error be responsible for the costs accruing in this court, but that his counsel should also be responsible, the counsel signing the bill of exceptions as well as those appearing in this court, although they neither signed nor tendered the bill of exceptions. It was evidently the purpose of the General Assembly to make the collection of the costs due in this court reasonably certain. If counsel were compelled to pay the costs, they had a claim upon their clients for that amount, and if their clients were successful here, a judgment could be entered in the court below in favor of the clients, which would inure to the benefit of the attorneys. If the plaintiff in error had himself paid the costs, and the judgment of the court below been affirmed, he had discharged a liability which the law imposed upon him, and if he was ultimately liable for these costs, he would have no remedy against any one else. If the plaintiff in error paid the costs here and secured a reversal of the judgment, the defendant in error would be the one ultimately liable for the costs accruing here, and the plaintiff in error would have a right to have judgment entered against him for the amount he had paid out. In criminal cases, prior to the constitution of 1877, if the plaintiff in error paid the costs and the judgment was affirmed, he, like a plaintiff in error in a civil case under similar circumstances, simply discharged a liability which the law placed upon him. Of course, in case of reversal in a criminal case, there could be no judgment for costs against the State, either in this court or in the court below. There were some hardships resulting from the rule requiring that the costs in this court should be paid by the plaintiff in error or his counsel. Counsel representing a client who was undoubtedly a pauper, but one who had a meritorious case, would be required to pay out of his own pocket the costs in this court. This was specially true in criminal

cases. In a case of that character the accused who was a pauper, notwithstanding he might have a meritorious case, was unable to prosecute it in this court, unless. he could obtain counsel who was willing to advance the amount for him out of his own pocket.

The hardship resulting to persons of undoubted poverty was recognized by the framers of the constitution of 1877, and a provision to the following effect was inserted therein: " Plaintiffs in error shall not be required to pay costs in [the Supreme] court when the usual pauper oath is filed in the court below." Civil Code, § 5881. The section of the code in relation to the liability of counsel for costs in this court has been so changed as to conform to the constitution, and is now in the following language: ."Every attorney for the plaintiff in error, who argues or presents a cause to the Supreme Court, is liable to the clerk for costs, except in a pauper case." Civil Code, § 5513. The present rules of this court provide that attorneys representing plaintiffs in error, as well those heard orally or by briefs in this court as those signing the bill of exceptions, are jointly and severally bound for costs, save where the pauper affidavit is filed in the prescribed manner. And it is distinctly provided that "No case in which cost is due will be heard (except by special order of the court) until the cost is paid; and if not paid when the case is called, the clerk shall so inform the court, whereupon the case will be dismissed." Rules 14 and 15, Civil Code, §§ 5613, 5614. It is also provided that, upon the reversal of any judgment of a lower court, the party in whose favor the reversal is had shall be entitled to collect in the court below all costs paid by him in this court. Rule 16, Civil Code, § 5615. The question arises, what is meant by the word "require" in the clause of the constitution above quoted ? When the constitution declares that plaintiffs in error shall not be *required* to pay costs in this court, does it mean that they shall be relieved from all liability for costs, or does it mean simply that when one has filed a pauper affidavit, he shall be treated for the time being as unable to pay costs, and the case be heard notwithstanding the costs have not been paid? In the light of the legislation on the subject of costs prior to the constitution of 1877, and since that time, as well as the rules adopted from time to time by this court, we think the correct conclusion is that it was not the intention of the framers of the constitution to entirely relieve a plaintiff in error who filed a pauper

affidavit from all liability for costs in this court, but that when he was, at. the time he desired to bring his case to this court, in a position where he was unable from poverty to pay the costs due here, and .made an affidavit to that effect, he should be entitled to be heard in this court.    In other words, under such circumstances, he was entitled to be heard at the expense of the State, and the State having given him, on account of his poverty, the right to be heard in its highest court, he had no right to complain if the State or those representing it or claiming under it entered upon the records of the court a judgment against him, to be satisfied out of any property that he might thereafter acquire.    Especially would he have no right to. complain if the affidavit he made was untrue in point of fact, and the judgment entered against him would be collectible immediately out of property owned by him.    If the proper pauper affidavit is filed, counsel for plaintiff in error is relieved altogether from the payment of costs, and the plaintiff in error is entitled to have his case heard without further question.    There is no provision of law authorizing a traverse of this affidavit, or an investigation to be entered into as to the truth of its statements.    And when the counsel of a pauper have been relieved of this burden and the pauper himself has had his case heard and determined, the requirements of the constitution are satisfied, and it was clearly not the intention of the framers of that instrument to give to the plaintiff in error any greater privileges than this.    To relieve him from a judgment for costs in the court below, if he was an unsuccessful litigant in this court, and to relieve him if he was a person convicted of crime from having the costs due in this court taxed against him in the court below and a judgment for the same entered and collected with the fine, if the offense was one punishable by the imposition of fine and costs, would certainly be giving him a greater privilege than the framers of the constitution contemplated, and would be practically repealing all those provisions of law with reference to taxing costs in this court, having the bill for the same transmitted to the court below, and having judgment for the same entered and enforced in the court below.

It has been, from the very foundation of this court to the present day, the privilege of any litigant to secure a hearing in this court without paying the costs of the court below, as well as to obtain a supersedeas of the judgment until a decision by this court,

upon filing an affidavit that he is unable from poverty to pay the costs and give the bond required by law.   1 *Kelly*, xii; Civil Code, § 5552.   Still it has never been contended by any one that the filing of the affidavit in such cases relieved the party from a judgment for the costs if he was ultimately held to be 'liable for the costs of the case.   If a civil case brought here upon a pauper affidavit is affirmed, the clerk should tax the costs in the case as in other cases and enter the same upon the remittitur, and when it reaches the court below a judgment should be entered for the costs thus taxed.   It is the duty of the officers of that court to collect the same as other executions for costs are collected, transmitting the amount collected to the clerk of this court.   If a civil case brought here on pauper affidavit is reversed, the costs should in like manner be taxed and entered on the remittitur, and when it is received in the court below, judgment for such costs should be entered against the defendant in error and collected as other costs in the case and transmitted to the clerk of this court.   When a criminal case is brought to this court on a pauper affidavit and the same is affirmed, the costs should be taxed as in other cases, and entered on the remittitur, and when it has been made the judgment of the court below, the costs entered thereon should be taxed as costs in that court and collected of the defendant in the same manner that any other costs in criminal cases are collected, the collecting officer remitting to the clerk of this court the amount so collected.   In cases other than pauper cases, when counsel are required to pay the costs, they have a remedy to reimburse themselves under the provisions of law above referred to.   When in a pauper case the State directly pays the costs for the pauper, by compelling its officers to perform their duties without demanding the costs from him, it is only just that the State should be accorded the same rights as to reimbursement that the laws of the State give to counsel against a client either pauper or otherwise.   Of course, in a pauper civil case where the judgment is affirmed, and even in a pauper criminal case where the judgment is affirmed, there is a remedy under the rules of this court to collect the costs by execution issued by the clerk of this court; but the remedy above referred to, by transmitting to the court below the bill of costs as taxed in this court and having judgment entered in that court, seems to be more satisfactory, and would generally be more effective.

*Judgment reversed.   All the Justices concurring.*